Dwight Yellen (DY 6547)
Michael J. Sheppeard (MS 9115)
**BALLON STOLL BADER & NADLER, P.C.**
729 Seventh Avenue – 17th Floor
New York, NY 10019
Ph.: 212.575.7900
www.ballonstoll.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MAXLITE, INC.

        *Plaintiff,*

- against -

M & C LIGHTING LTD F/N/A MODERN AND CLASSIC LIGHTING, LTD. D/B/A EXCEEDLITE, DENNIS SHIA, AND JOHN DOES 1-10, and XYZ CORP 1- 10.

        *Defendants.*

**Case No.: 12-cv-04072**

**MEMORANDUM OF LAW IN SUPPORT
OF MAXLITE'S APPLICATION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ...................................................................................................................1
FACTS .....................................................................................................................................2
ARGUMENT............................................................................................................................2
    I.  MAXLITE IS ENTITLED TO A PRELIMINARY INJUNCTION ...............................2
        A.  MaxLite Has a Likelihood of Success on the Merits..............................................3
            i.  Breach of Contract ...........................................................................................3
            ii.  M&C has Misappropriated MaxLite's Confidential Information ...................6
        B.  MaxLite Will Continue to Irreparably Harmed Absent Court Intervention ............9
        C.  Balance of the Hardships Tips in Favor of MaxLite .............................................12
        D.  The Public Interest is Served by Imposing an Injunction......................................13
CONCLUSION ......................................................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                                              Page

*ACE American Ins. Co. v. Wachovia Ins. Agency, Inc.*,
  No. 08-cv-4369, 2008 U.S. Dist. LEXIS 83076, 2008 WL 4630486, at *9
  (D.N.J. Oct. 17, 2008)..................................................................................................13

*Arch Pers. Care. Prods, L.P. v. Malmstrom*,
  90 F. App'x 17 (3d Cir. 2003)..............................................................................9, 10, 11

*Bakery Drivers & Salesmen Local 194, IBT v. Harrison Baking Group, Inc.*,
  869 F.Supp. 1168 (D.N.J. 1994)......................................................................................3

*Bimbo Bakeries USA, Inc. v. Botticella*,
  613 F.3d 102 (3d Cir. 2010) ............................................................................................2

*Campbell Soup Co. v. ConAgra, Inc.*,
  810 F. Supp. 1298 (D.N.J. 1991).....................................................................................3

*Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*,
  386 F.3d 514 (3d Cir. 2004) ............................................................................................2

*Corning Glass Works v. Jeanette Glass Co.*,
  308 F. Supp. 13218 (S.D.N.Y. 1970) ............................................................................12

*Dificcio v. Winnebago Indus.*,
  2012 U.S. Dist LEXIS 70341 (D.N.J. 2012) ...................................................................3

*Esquire Deposition Servs., LLC v. Boutot*,
  2009 U.S. Dist LEXIS 52207 (D.N.J. June 19, 2009)..........................................9, 11, 12

*Gerardi v. Pelullo*,
  16 F.3d 1363 (3d Cir.1994) .............................................................................................3

*GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.*,
  197 Fed.Appx. 120 (3d Cir. 2006)...................................................................................3

*Graco, Inc. v. PMC Global, Inc.*,
  2009 WL 904010, 73 Fed. R. Serv. 3d 52 (D.N.J. 2009) ................................................6

*Kos Pharms. Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004) ..........................................................................................12

*Jackson Hewitt, Inc. v. Barnes*,
  No. 10-05108, 2011 U.S. Dist. LEXIS 4823, 2011 WL181431 (D.N.J. Jan. 18, 2011) .....10, 12

*Laidlaw, Inc. v. Student Transp. of America, Inc.*,
  20 F. Supp.2d 727 (D.N.J. 1998)...............................................................................9, 11

*Maldonado v. Houstoun*,
  157 F.3d 179(3d Cir. 1998), *cert. denied*, 526 U.S. 1130,119 S. Ct. 1802 (1999)...................23

*Metro. Foods, Inc. v. Kelsch*,
  2012 U.S. Dist. LEXIS 19379, 9 (N.J. 2012) ................................................................. 6, 7

*Morton v. Beyer*,
  822 F.2d 364 (3d Cir. 1987) ............................................................................................ 9

*Nat'l Reprographics, Inc. v. Strom*,
  621 F. Supp. 2d 204 (D.N.J. 2009) .............................................................................. 9, 11

*Opticians Ass'n of America v. Independent Opticians of America*,
  920 F.2d 187 (3d Cir. 1990) ............................................................................................ 3

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
  143 F.3d 800 (3d Cir. 1998) .......................................................................................... 12

*Prall v. Ellis*,
  2012 U.S. Dist. LEXIS 28388 (D.N.J. 2012) .................................................................. 3

*Restaurant Technologies, Inc. v. Allora*,
  2008 U.S. Dist. LEXIS 62405, 2008 WL 3843527 (N.J. 2008) .................................. 6, 7

*Richards Mfg. Co. v. Thomas & Betts Corp.*,
  No. 01-4677, 2005 WL 2373413, 6-7 (D.N.J. 2005)
  (*aff'd* 342 Fed. Appx. 754 (3d Cir. 2009) .................................................................... 7

*Rohm & Haas Co. v. Adco Chem. Co.*,
  689 F.2d 424 (3d Cir. 1982) ............................................................................................ 6

*Thomas & Betts Corp. v. Richards Mfg. Co.*,
  342 Fed. Appx. 754, 760 (3d Cir. N.J.2009) ........................................................... 6, 7, 8

*Trico Equip., Inc. v. Manor*,
  2009 U.S. Dist. LEXIS 50524 (D.N.J. June 13, 2009) ................................... 9, 10, 11, 12

*Wright Med. Tech., Inc. v. Somers*,
  37 F.Supp.2d 673 (D.N.J. 1999) ........................................................... 9, 11, 12, 13

**State Cases**

*Bertani Promotional Displays v. Midwest Display, Inc.*,
  2007 WL 685505 (N.J. App. Div. 2008) ........................................................................ 7

*Forman Indus., Inc. v. Blake-Ward*,
  2008 WL 4191155 (N.J. App. Div. 2008) .................................................................. 6, 7

*J. H. Renarde, Inc. v. Sims*,
  312 N.J. Super. 195 (Ch.Div. 1998) ......................................................................... 10, 12

*Lamorte Burns & Co. v. Walters*,
  167 N.J. 285 (2001) ...................................................................................................... 6, 7

*National Starch and Chemical Corp. v. Parker Chemical Corp.*,
  219 N.J. Super. 158, 530 A.2d 31 (N.J. Super. Ct. App. Div. 1987) ...................... 10, 12

*Platinum Mgmt., Inc. v. Dahms*,
    285 N.J. Super. 274, 666 A.2d 1028 (Law Div.1995) ................................................................6, 7

Case 2:12-cv-04072-KSH-CLW   Document 7   Filed 07/09/12   Page 5 of 18 PageID: 188

## INTRODUCTION

MaxLite, Inc. ("MaxLite"), a New Jersey based company, was a pioneer and is now a market leader in energy efficient lighting products. As is more fully described in the Declaration of Yon W. Sung ("Sung Declaration"), many times MaxLite is actually creating the market for many of these energy efficient products. As such, it is important for MaxLite to protect this intellectual property and confidential information concerning these products so that it can continue to develop better and more efficient lighting products. In order to provide this protection, the companies contracted with to produce MaxLite's products are required to execute a vendor agreement which prevents the production facility from selling substantially similar products to MaxLite competitors, as well as providing protection for MaxLite's confidential information, trade secrets and intellectual property.

Here, the Defendants, (M&C Lighting Ltd f/k/a Modern and Classic Lighting, LTD., d/b/a Exceedlite ("M&C") and Dennis Shia ("Shia"), the owner of M&C,) entered into the M&C Vendor Agreement, whereby M&C agreed that (i) the products purchased by MaxLite would be exclusive to MaxLite even if modifications or design changes are made to such products; (ii) MaxLite would remain the sole owner of all intellectual property and know-how conveyed to M&C; (iii) all confidential information provided by MaxLite would be kept in strict confidence and used only for the benefit of MaxLite; (iv) M&C was forbidden from using MaxLite to promote itself; and (v) M&C would not solicit or make offers of employment to MaxLite's personnel. These protections were necessary to prevent M&C from taking the information gained from its relationship with MaxLite and utilizing it to MaxLite's detriment. The Defendants, however, have done exactly that.

1

MaxLite has recently discovered that M&C has been utilizing MaxLite's intellectual property and confidential information to build itself into a self-professed direct competitor of MaxLite. The Defendants are in fact so brazen that they have contacted MaxLite's customers in an attempt to directly solicit business. In this solicitation, the Defendants claim that can provide the products identical to those of MaxLite, as they are the manufacturer for MaxLite, at a significantly lower price. The Defendants have even started to contact and recruit MaxLite personnel. These actions (and the others described in the Sung Declaration) violate the terms of the M&C Vendor Agreement and are causing irreparable harm to MaxLite.

MaxLite submits that after reviewing this application, the Court will agree that the injunctive relief requested herein is appropriate and will grant MaxLite's request for a preliminary injunction.

## FACTS

Rather than repeat the facts that were fully set forth in the Declaration of Yon W. Sung ("Sung Declaration"), MaxLite incorporates the Sung Declaration as if fully set forth herein. MaxLite will continue to use the abbreviations and defined terms set forth therein for ease for ease of reference.

## ARGUMENT

### I. MAXLITE IS ENTITLED TO A PRELIMINARY INJUNCTION

Ordinarily, a party seeking a preliminary injunction must demonstrate (1) a likelihood of success on the merits, (2) irreparable harm absent the injunctive relief, (3) the balance of the hardships tips in favor of the movant and (4) granting the injunction is in the public interest. *See Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010); *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. School Dist.*, 386 F.3d 514, 524 (3d Cir. 2004);

*Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998), *cert. denied*, 526 U.S. 1130, 119 S. Ct. 1802 (1999); *Prall v. Ellis*, 2012 U.S. Dist. LEXIS 28388 (D.N.J. 2012); *see also Campbell Soup Co. v. ConAgra, Inc.*, 810 F. Supp. 1298 (D.N.J. 1991) (*citing Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 191-192 (3d Cir. 1990)). It is important to note that in determining whether a preliminary injunction should be granted, a district court must weigh the appropriate factors rather than mechanically apply them. *See GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.*, 197 Fed. Appx. 120, 124 (3d Cir. 2006) (*citing Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994)). Of the four requirements, Courts place particular emphasis on the probability of irreparable harm and the likelihood of success on the merits factors. *See Bakery Drivers & Salesmen Local 194, IBT v. Harrison Baking Group, Inc.*, 869 F. Supp. 1168, 1177 (D.N.J. 1994).

As discussed below, MaxLite has suffered and continues to suffer irreparable harm as a result of the actions of the Defendants and as such satisfies the requisite elements for the issuance of injunctive relief. MaxLite respectfully requests that the Court grant the requested relief.

### A. MaxLite Has a Likelihood of Success on the Merits.

### (i) Breach of Contract

To state a claim for breach of contract, a plaintiff must allege there was a contract between the parties that the plaintiff performed its own obligations under the contract, a breach of that contract, damages resulting from that breach. *See Deficcio v. Winnebago Indus.*, 2012 U.S. Dist. LEXIS 70341, 13 (D.N.J. 2012). Here, it is undeniable that there is a contract between the parties—the M&C Vendor Agreement. Sung Declaration ¶21 and Exhibit 1. The M&C

Vendor Agreement sets forth the terms and conditions under which M&C and MaxLite would conduct business.

The Restrictive Covenants. At issue herein are the restrictive covenants set forth in the M&C Agreement which were to prevent M&C from (i) rebadging MaxLite's products and selling them to anyone but MaxLite (Sung Declaration ¶24 and Exhibit 1, §11); (ii) utilizing Maxlite's intellectual property and confidential information for the benefit of anyone but MaxLite (Sung Declaration ¶¶25 – 26 and Exhibit 1, §11); (iii) utilizing MaxLite's trademark, name and associated goodwill with the promotion of M&C (Sung Declaration ¶27 and Exhibit 1, §11(b)); and (iv) the non-solicitation of MaxLite personnel (Sung Declaration ¶28 and Exhibit 1, §12.4).

Exposure to MaxLite's Confidential Information. As is detailed more fully in the Sung Declaration, until the end of 2011, MaxLite viewed M&C as a business partner, friend and fiduciary it could count on to supply products in the quality and quantity ordered. Sung Declaration ¶16 and ¶47-64. As a result of this relationship, M&C was privy to much of MaxLite's confidential information. Sung Declaration ¶¶12-19 and ¶¶29 - 33. M&C's exposure to MaxLite's confidential information included (i) meeting and interacting with the business and sales teams at MaxLite; (ii) meeting customers; (iii) being provided sales trends and market pricing conditions at the annual meetings; (iv) customer identities through direct fulfillment of orders; and (v) MaxLite's pricing through direct fulfillment of orders. *Id.*

This confidential information, however, was protected by the M&C Vendor Agreement, wherein M&C agreed that any and all information provided by MaxLite would be treated as confidential. Sung Declaration ¶¶21 - 28. The M&C Vendor Agreement also provides a comprehensive, but not exhaustive, list concerning the scope of information to be considered

4

confidential. *Id.* M&C specifically agreed that the following items constituted protectable confidential information, including: (i) matters of a technical nature, such as know-how; (ii) matters of a business nature, including profits, pricing, customer identities and sales suppliers; (iii) matters of a human resources nature, including personnel; (iv) all other information not generally disclosed to the public. Sung Declaration ¶¶21 – 28 and Exhibit 1, §11(e). M&C further agreed that the confidential information provided by MaxLite would be kept in strict confidence, used only for the benefit of MaxLite, and would not be shared with others, nor would M&C utilize such information for its own benefit. Sung Declaration ¶¶21 – 28 and Exhibit 1, §§11 (c) and (d). Due to the nature of the confidential information, M&C agreed that injunctive is appropriate for such improper disclosure or use of the confidential information, as this was the only way MaxLite could adequately protect itself. Sung Declaration ¶¶25 – 26 and Exhibit 1, §11(e).

<u>M&C's Numerous Breaches</u>. As is detailed in the Sung Declaration, M&C has breached each of the foregoing restrictive covenants in that it has (i) sold and continues to sell products that were exclusive to MaxLite to other parties (Sung Declaration ¶¶26, 40 – 45, 49 – 50, 53-54 and Exhibits 1, §11(e), 2, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, and 16); (ii) misappropriated MaxLite's intellectual property and confidential information for its own benefit (Sung Declaration ¶¶ 40 – 45, 49 – 50, 53-54, and 56 – 64, Exhibits 2, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, and 16); (iii) directly solicited MaxLite's customers by claiming that it was the manufacturer for MaxLite and that it could provide products identical to MaxLite (Sung Declaration ¶56- 61 and Exhibits 12, 13, 14, 15 and 16); and solicited MaxLite's personnel. *Id.* As a result of the betrayal of M&C, MaxLite has and continues to suffer irreparable harm as will be discussed below.

**(ii) M&C has Misappropriated MaxLite's Confidential Information**

In order to sustain a claim for misappropriation of trade secrets a party a party must demonstrate (1) the existence of a trade secret or confidential information, (2) that is communicated in confidence, (3) disclosure or use in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff. *See Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982). Unlike in trade secret law, these four factors are not to be treated as essential elements of a cause of action for the misappropriation of confidential information, as a rigorous examination is not required for the protection of confidential information. *See Thomas & Betts Corp.*, 342 Fed. Appx. at 760. While these factors are helpful, the focus of the inquiry in determining the misappropriation of confidential information is the relationship of the parties at the time of disclosure and the intended use of the information. *See Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 294, 666 A.2d 1028 (Law Div. 1995); *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 300, 770 A.2d 1158, 1166 (2001); *Metro. Foods, Inc. v. Kelsch*, 2012 U.S. Dist. LEXIS 19379, 9 (D.N.J. 2012); *Rest. Technologies, Inc. v. Allora*, 2008 U.S. Dist. LEXIS 62405 (D.N.J. 2008) (*citing Lamorte Burns and Co.*, 167 N.J. at 770).

The first issue that must be examined by the court when faced with a claim for misappropriation of confidential information, is whether the information at issue is, in fact, legally protectable. *See Lamorte Burns and Co., Inc.*, 167 N.J. at 298; *Forman Indus., Inc. v. Blake-Ward*, 2008 WL 4191155 (N.J. Super. Ct. App. Div. 2008). For example, in New Jersey, courts have generally found confidential information to include customer lists and information relating to merchandising, costs and pricing. *See Lamorte Burns and Co.*, 167 N.J. at 298. It is

important to note that information does not have to meet the strict requirements of a trade secret to be legally protected as confidential and may remain protected even though it is publicly available elsewhere. *See Lamorte Burns & Co.*, 167 N.J. at 299; *Platinum Management, Inc.*, 285 N.J. Super. at 295 (holding that while customer names were available on readily accessible trade directories, the fact that they were Plaintiff's customers was not and therefore the information was protectable); *Rest. Technologies, Inc.*, 2008 U.S. Dist. LEXIS 62405, 20-21; *Thomas & Betts Corp.*, 342 Fed. Appx. at 758; *Graco, Inc. v. PMC Global, Inc.*, 2009 WL 904010, 73 Fed. R. Serv. 3d 52 (D.N.J. 2009). In fact, an agreement between the parties that certain information is confidential is a strong indication that the information is, in fact, confidential. *See Forman Indus., Inc.*, 2008 WL 4191155; *Bertani Promotional Displays v. Midwest Display, Inc.*, 2007 WL 685505 (N.J. Super. Ct. App. Div. 2007) (noting that the presence of a confidentiality agreement suggests that the information at issue is legally protectable). Therefore, courts have routinely held that such information is protectable. *See Rest. Technologies, Inc.*, 2008 WL 3843527 (*citing Richards Mfg. Co. v. Thomas & Betts Corp.*, 2005 WL 2373413, 6-7 (D.N.J. 2005) (*aff'd* 342 Fed. Appx. 754 (3d Cir. 2009)). This conclusion is further bolstered where such information is relayed pursuant to a restrictive covenant covering proprietary information and customer relationships for the purposes of servicing the plaintiff, as courts have found that such information was protectable and subject to injunctive relief. *See Platinum Management, Inc.*, 285 N.J. Super. at 294; *Lamorte Burns & Co.*, 167 N.J. at 301 ("The specific information provided to defendants by their employer, in the course of employment, and for the sole purpose or servicing plaintiff's customers, is legally protectable as confidential information."); *Thomas & Betts Corp.*, 342 Fed. Appx. at 759; *Metro. Foods, Inc.*, 2012 U.S. Dist. LEXIS 19379. Finally, confidential information remains protectable

between two parties even where such information may be known to professionals in an industry, particularly where such confidential information provides a production advantage over other competitors. *See Thomas & Betts Corp.*, 342 Fed. Appx. at 760.

M&C Agreed to Hold the Confidential Information In Trust for MaxLite. Here, M&C has agreed M&C agreed that the confidential information provided by MaxLite would be kept in strict confidence, used only for the benefit of MaxLite, and would not be shared with others, nor would M&C utilize such information for its own benefit. Sung Declaration ¶25-26 and Exhibit 1, §§11 (c) and (d). This confidential information included (i) matters of a technical nature, such as know-how; (ii) matters of a business nature, including profits, pricing, customer identities and sales suppliers; (iii) matters of a human resources nature, including personnel; (iv) all other information not generally disclosed to the public. Sung Declaration ¶25-26 and Exhibit 1, §11(e)

M&C Betrays MaxLite and Utilizes the Confidential Information for its own Benefit. As described more fully in the Sung Declaration, M&C has (i) utilized the know-how and technical information provided to M&C in order to sell products that were exclusive to MaxLite to other parties (Sung Declaration ¶¶26, 40 – 45, 49 – 50, 53-54 and Exhibits 1, §11(e), 2, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, and 16); (ii) misappropriated MaxLite's intellectual property and confidential information for its own benefit to produce and sell lighting products identical to MaxLite's (Sung Declaration ¶¶26, 40 – 45, 49 – 50, 53-54 and Exhibits 1, §11(e), 2, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, and 16); (iii) directly solicited MaxLite's customers by claiming that it was the manufacturer for MaxLite and that it could provide products identical to MaxLite (Sung Declaration ¶56- 61 and Exhibits 12, 13, 14, 15 and 16); and solicited MaxLite's personnel. *Id.* In order for M&C to accomplish each of the foregoing acts, it had to misappropriate MaxLite's confidential information. As if stealing and misusing the confidential information was not bad enough, M&C

has the audacity to actively utilize MaxLite's trademark, name, and goodwill in soliciting MaxLite's customers. Without this Court's intervention, M&C will continue to utilize the information garnered from working with MaxLite for nearly 14 years to poach personnel and customers. The damage caused by this will be immeasurable.

### B. MAXLITE WILL CONTINUE TO BE IRREPARABLY HARMED ABSENT COURT INTERVENTION

Irreparable harm must be of a peculiar nature, such that monetary compensation alone cannot atone for it. *See Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987). In New Jersey, courts recognize that protecting confidential business information and protecting customer relationships are legitimate and protectable interests. *See Trico Equip., Inc. v. Manor*, 2009 U.S. Dist. LEXIS 50524, 17 (D.N.J. 2009). Courts have long held that the loss of good will, the disclosure of confidential and proprietary information, and the interference with customer relationships can establish irreparable harm. *See Trico Equip., Inc.*, 2009 U.S. Dist. LEXIS 50524, 22-24 (*quoting Laidlaw, Inc. v. Student Transp. of America, Inc.*, 20 F. Supp. 2d 727, 766 (D.N.J. 1998)); *Wright Med. Tech., Inc. v. Somers*, 37 F. Supp. 2d 673 (D.N.J. 1999) ("loss to business reputation and customer goodwill...is not monetizable and must properly be enjoined to prevent irreparable harm"). In cases involving confidential information, a court will enforce a restrictive covenant via injunctive relief, *see Esquire Deposition Servs., LLC v. Boutot*, 2009 U.S. Dist. LEXIS 52207 (D.N.J. June 19, 2009); *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 230 (D.N.J. 2009) ("[t]here is no question that using NRI's confidential information and proprietary information for the benefit of its competitors could potentially destroy NRI's business, built over 100 years."); *see, e.g., Arch Pers. Care. Prods, L.P. v. Malmstrom*, 90 F. Appx 17 (3d Cir. 2003) (affirming district court's grant of injunctive relief to enforce a non-

compete agreement), to prevent disclosure or inappropriate use, *see Trico Equip., Inc.*, 2009 U.S. Dist. LEXIS 50524, 17, as such actions amount to irreparable harm. *See National Starch and Chemical Corp. v. Parker Chemical Corp.*, 219 N.J. Super. 158, 163, 530 A.2d 31, 33 (N.J. Super. Ct. App. Div. 1987) (noting that "[d]amages will not be an adequate remedy when the competitor has obtained the secrets. The cat is out of the bag and there is no way of knowing to what extent their use has caused damage or loss."); *Trico Equip., Inc. v. Manor*, 2009 U.S. Dist. LEXIS 50524, 21-24 (D.N.J. 2009); *J. H. Renarde, Inc. v. Sims*, 312 N.J. Super. 195, 203, 711 A.2d 410, 415 (Ch. Div. 1998) (finding that any attempt to quantify such damages would be problematic, not only in determining whether a particular customer who may be served by defendants is one which would have gone to plaintiff's business but also because of the difficulty in ascertaining the monetary value of that loss of business, thereby making the damage irreparable). A finding of irreparable harm is particularly appropriate where the parties acknowledge in the contract that the confidential information will necessarily be conveyed to the other party in the performance of the contract and that the only means of protecting such conveyance is the enforcement of the covenant. *See J. H. Renarde, Inc.*, 312 N.J. Super. at 203. This finding is further bolstered where the parties have agreed as part of a contract that such a violation would amount to irreparable harm. *See Trico Equip., Inc.*, 2009 U.S. Dist. LEXIS 50524, 24; *National Starch and Chemical Corp.*, 219 N.J. Super. 158; *Jackson Hewitt, Inc. v. Barnes*, 2011 U.S. Dist. LEXIS 4823, 2011 WL 181431 (D.N.J. 2011).

Here there can be no doubt that MaxLite is being irreparably harmed. M&C has agreed that the confidential information provided by MaxLite would be kept in strict confidence, used only for the benefit of MaxLite, and would not be shared with others, nor would M&C utilize such information for its own benefit. Sung Declaration ¶25-26 and Exhibit 1, §§11 (c) and (d).

As is set forth in the Sung Declaration and elsewhere herein, M&C is utilizing MaxLite's confidential information for its own benefit. Sung Declaration ¶¶26, 40 – 45, 49 – 50, 53-54 and Exhibits 1, §11(e), 2, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, and 16. In fact, in attempting to poach one of MaxLite's sales representatives, M&C admitted that it was now a direct competitor in the market place due to the misappropriation of the confidential information. Sung Declaration ¶56-61 and Exhibits 12, 13, 14, 15 and 16. The misappropriation of confidential information is further bolstered by M&C's solicitation of MaxLite's customers by claiming it was the manufacturer and as such can provide identical products to those of MaxLite.

Here, in order to prevent further disclosure or inappropriate use, the Court should enforce the restrictive covenants between MaxLite and M&C by granting the requested injunctive relief. *See Esquire Deposition Servs., LLC*, 2009 U.S. Dist. LEXIS 52207; *Nat'l Reprographics, Inc.*, 621 F. Supp. 2d at 230 ("[t]here is no question that using NRI's confidential information and proprietary information for the benefit of its competitors could potentially destroy NRI's business, built over 100 years."); *See, e.g., Arch Pers. Care. Prods, L.P.*, 90 F. Appx. 17 (affirming district court's grant of injunctive relief to enforce a non-compete agreement). It is undeniable that the loss of good will, the disclosure of confidential and proprietary information, and the interference with customer relationships are protectable and amounts to irreparable harm. *See Trico Equip., Inc.*, 2009 U.S. Dist. LEXIS 50524, 22-24 (*quoting Laidlaw, Inc.*, 20 F. Supp. 2d at 766; *Wright Med. Tech., Inc.*, 37 F. Supp. 2d at 683 ("loss to business reputation and customer goodwill...is not monetizable and must properly be enjoined to prevent irreparable harm"). Further bolstering the requested relief is the fact that M&C specifically agreed such information being utilized by it was in fact confidential, *see J. H. Renarde, Inc.*, 312 N.J. Super. at 203, and that any breach would amount to irreparable harm. *See Trico Equip., Inc.*, 2009 U.S.

Dist. LEXIS 50524, 24; *National Starch and Chemical Corp.*, 219 N.J. Super. 158; *Jackson Hewitt, Inc.*, 2011 U.S. Dist. LEXIS 4823. Accordingly, MaxLite submits that it has adequately demonstrated that the Defendants utilizing MaxLite's confidential information to MaxLite's detriment, and as such a preliminary injunction is necessary to prevent the harm to MaxLite. *See Esquire Deposition Servs., LLC*, 2009 U.S. Dist. LEXIS 52207, 32-33 (*citing Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.").

### C. BALANCE OF THE HARDSHIPS TIPS IN FAVOR OF MAXLITE

Here, the harm to MaxLite by far exceeds the harm that the defendants may experience as a result of injunctive relief. The defendants have operated for approximately 14 years without exploiting MaxLite's confidential information for their own benefit. The harm that will come to the defendants' fledgling business will be one they are required to justifiably bear for their actions. *See Corning Glass Works v. Jeanette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970). Courts may discount the injury a defendant may suffer if an injunction were imposed, where the defendant brought that injury on itself. *See Kos Pharm. Inc. v. Andrx Corp.*, 369 F.3d 700, 728 (3d Cir. 2004). To hold otherwise would allow a wrongdoer to build its business around such activities and avoid an injunction by claiming it would have a devastating effect on the business. This is a result the Court cannot condone. *Id.* Accordingly, MaxLite submits that the balance of the hardships tips decidedly in its favor.

### D. THE PUBLIC INTEREST IS SERVED BY IMPOSING AN INJUNCTION

New Jersey has long held that the judicial enforcement of non-competition provisions and confidentiality agreements also serves the public interest serves the public interest by promoting stability and certainty in business and employment relationships. *See Wright Medical*

*Technology, Inc.*, 37 F. Supp. 2d at 684; *ACE American Ins. Co. v. Wachovia Ins. Agency, Inc.*, 2008 U.S. Dist. LEXIS 83076, 49-50, 2008 WL 4630486, 16 (D.N.J. 2008). Furthermore, it also appears that while the defendants claim that they are offering products identical to those of MaxLite, their products appear to improperly claim that they are Energy Start compliance and UL compliant. Given the potential safety issues with such false designations, an injunction would also benefit the public by keeping potential hazardous fixtures off the market. As such, the interest of the public is served through the issuance of a preliminary injunction.

## CONCLUSION

For the foregoing reasons, MaxLite's application should be granted in its entirety together with such further relief the court deems just and equitable.

Dated: New York, New York
       09 JULY 2012

BALLON STOLL BADER & NADLER, P.C.
*Attorneys for MaxLite, Inc.*

By: Dwight Yellen (DY 6547)
    dyellen@ballonstoll.com
    Michael J Sheppeard (MS 9115)
    msheppeard@ballonstoll.com
    729 Seventh Avenue - 17th Floor
    New York, New York 10019
    Tel. (212) 575-7900