**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAXLITE, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> M&C LIGHTING LTD F/N/A MODERN AND CLASSIC LIGHTING, LTD. D/B/A EXCEEDLITE, DENNIS SHIA, AND JOHN DOES 1-10, AND XYZ CORP. 1-10, <br><br> *Defendants*. | Civil No.: 2:12-cv-04072 (KSH)(CLW) <br><br><br> **Opinion** |

**I.   Introduction**

This matter comes before the Court on the appeal by M&C Lighting Ltd ("M&C") and Dennis Shia ("Shia") (collectively "defendants") (DE 139) from Magistrate Judge Waldor's order (DE 138) requiring M&C to translate certain documents from Chinese into English. For the reasons set forth below, the Court affirms Judge Waldor's order.

**II.   Background**

Plaintiff Maxlite, Inc. ("Maxlite") is a designer, manufacturer, and distributor of energy efficient lighting products. (DE 1 ("Compl.") ¶ 7.) Defendant M&C was one of Maxlite's manufacturing sources for its name brand merchandise. (*Id.* ¶ 15.) M&C is based in Hong Kong and operates a factory in Dongguan, China, which was formerly

1

managed by Ren Ben ("Ben")[1]. (*Id.*) Dennis Shia ("Shia") was M&C's former president and owner. (*Id.* ¶ 5.)

In 2007, the parties entered into a vendor agreement whereby M&C manufactured certain lighting products that were to be sold exclusively to Maxlite. (*Id.* ¶¶ 25-27.) The contract also required that M&C keep technical and business information confidential and prohibited it from using any information it learned from Maxlite for the benefit of any other person or entity. (*Id.* ¶¶ 28-31.)

Defendants contend that around 2011, Maxlite began to buy M&C lighting products from other manufacturers instead of from M&C, because Ben had arranged for other companies to produce them. (Moving Brief, at 2.) By 2012, Maxlite ceased doing business with M&C and instead began to buy from Ben's new employer and then, later, from Ben's own company. (DE 19 ("Counterclaim) ¶¶ 7-15.) Maxlite's relationship with Ben is at the core M&C's counterclaims.

In March 2012, M&C notified Maxlite that, for financial reasons, it would no longer abide by the exclusivity provision of their agreement. (*Id.* ¶ 55.) Thereafter, Maxlite alleges that it learned M&C was targeting its customers, sales staff, and EnergyStar distribution channels in order to sell them identical or virtually identical products in competition with Maxlite. (*Id.* ¶¶ 57-71.) Maxlite alleges that M&C violated

---

[1] Defendants identify the factory manager by the name "Ren Ben" in their answer. In their brief, they refer to him as "Ren Ben" and "Ben Ren" interchangeably. Maxlite calls him "David (Ben) Ren" and "Ren Ben." The Court will refer to him by the name the parties use for him most consistently: "Ren Ben" or its shortened form, "Ben."

the exclusivity and confidentially provision of their agreement by selling similar products and using information it had learned from Maxlite. (*Id.* ¶¶ 75-77.)

Maxlite brought this suit in July 2012 and asserted nine causes of action against defendants: breach of contract for violation of the exclusivity and confidentiality provisions; tortious interference with Maxlite's relationship with its customers and business associates; alter ego liability against Shia and his related entities; breach of the covenant of good faith and fair dealing; actual or threatened misappropriation of confidential and proprietary information; misappropriation of trade secrets; conversion; unfair competition; and tortious interference with business relationship/economic advantage against Maxlite's customers. (*See* Compl. ¶¶ 72-134.) In response, M&C asserted two counterclaims against Maxlite: unfair competition and breach of the covenant of good faith and fair dealing. (Counterclaim ¶¶ 5-26.)

### III. <u>Procedural History</u>

Initially, Maxlite filed for a preliminary injunction. (DE 4.) Before the motion was heard, M&C's counsel withdrew. (DE 43, 47.) The Court deemed defendants' opposition abandoned, entered default against them, and granted the preliminary injunction. (DE 50, 52, 53.) After M&C engaged new counsel, the Court vacated the default motion but left the preliminary injunction in place. (DE 63.) Thereafter, the Chinese government seized M&C's Dogguan factory, jailed Shia for a short period of time, and then prohibited his ability to travel—all of which delayed discovery for several years. (DE 144 ("Opposition Brief"), at 3.)

On August 30, 2019, M&C served its "Commercial Damages Report" upon Maxlite (D.E. 125), which was prepared by two Hong Kong certified public accountants, Alfred Wong Hon Chuen and Thomas Lai Sin Tong[2]. In the report, M&C contends that Maxlite's transfer of its business to Ben together with the Court's entry of the preliminary injunction on January 7, 2013 caused its financial failure in 2014.[3] (Moving Brief, at 3.)

This expert report and the financial statements annexed to it are in English, and the financial data is largely based in U.S. dollars. The accountants first estimated M&C's lost profits until the company's failure in 2014 and assigned a terminal value to it "but for Maxlite's wrongful conduct." (Moving Brief, at 4.) Next, they used the market valuation approach,[4] which required an assessment of comparable businesses to determine the fair market value of M&C's equity. To complete their analysis, the accountants identified two similar Chinese lighting companies with publicly available financial information: Opple Lighting Company Ltd., listed on the Shanghai Stock Exchange, and NVC Lighting Holding Ltd., listed on the Hong Kong Stock Exchange.

---

[2] Two accountants signed the report so they would have flexibility in arranging for one of them to travel to the United States if and when they were required to testify. (Moving Brief, at 3 n.1.)

[3] Maxlite claims that this "new theory of damages came as a surprise" to them and contends that "[t]hrough the backdoor of an expert report, M&C is attempting to interject a claim for damages based on wrongful injunction, even though such a claim is not pleaded in the Counterclaim." (Moving Brief, at 5, n 2.) Defendants consider Maxlite's argument "meritless." (DE 146 (Reply Brief), at 1.)

[4] More specifically, the experts used a "subset of the Market Value Approach, i.e., the Merger and Acquisition Method." (DE 139-1, ("Yeskoo Decl.") at Ex. 2.)

4

(Moving Brief, at 4.) Opple Lighting's filing is 407 pages and the NVC Lighting filing is 202 pages. (*Id.*) Both of these securities filings were written in Chinese.[5]

On September 19, 2019, in a letter to Judge Waldor about expert deposition testimony, Maxlite requested that the Court compel defendants to translate Opple Lighting and NVC Lighting's lengthy securities filings on grounds Wong and Tung, as M&C's experts, relied upon them in reaching their opinions. (DE 133 at 7.) At the discovery conference held on the record the next day, Judge Waldor analogized the Chinese language documents to computerized data that must be translated into a usable form under Rule 34 and ordered defendants make the translations, noting that it was "incomprehensible for an expert to turn over what they relied upon in Chinese." (DE 143 ("9/20/20 Hearing Transcript"), at 28, 30.) She also rejected M&C's alternative of translating the specific portion of the document the experts relied upon because Maxlite would need to review the entire document in order to properly cross-examine the expert. (*Id.* at 28-30.) Judge Waldor memorialized her ruling in an order filed on October 10, 2019. (DE 138 ("Translation Order").)[6] In relevant part, it states that "M&C shall translate into English any document relied upon by M&Cs experts Alfred Wong Hon Chuen and Thomas Lai Sin Tong, or appended to their report and shall

---

[5] At the September 19, 2019 hearing, counsel for Maxlite indicated that there may already be translations available for English-speaking investors. The Court has located what appears to be a translated version of the 2010 NVC Lighting Annual Report: https://www1.hkexnews.hk/listedco/listconews/sehk/2011/0428/ltn20110428263.pdf.

[6] The Translation Order required defendants to translate the securities filings no later than October 21, 2019, but Judge Waldor has stayed this timeline pending the outcome of this appeal. (DE 142.)

serve those translated documents upon Maxlite's counsel at least ten days prior to Mr. Chuen's deposition." (*Id.*)

Defendants solicited quotes for the cost of this translation immediately following the September 20, 2019 conference. The lowest available option was $60/page, totaling $36,420 for the 609-page project. (Moving Brief, at 5; Yeskoo Decl. Ex. 5.) Defendants have informed defense counsel they are unable to pay this cost. (Moving Brief, at 5.) They now move to appeal Judge Waldor's order requiring M&C to pay the full cost of translation (DE 139, 146), which Maxlite opposes. (DE 144.)

## IV.   **Legal Standard**

"Any party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days after the party has been served with a copy of the Magistrate Judge's order[.]" L. Civ. R. 72.1(c)(1)(A). The District Judge "shall consider the appeal…and set aside any portion of the Magistrate Judge Order found to be clearly erroneous or contrary to law." *Id.*

A magistrate judge's ruling is clearly erroneous when "although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is 'left with the definite and firm conviction that a mistake has been committed.'" *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (Debevoise, J.) (quoting *Dome Petroleum Ltd. v. Emp'rs Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990); *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). This is a discretionary standard; a finding is not clearly erroneous merely because the reviewing court would

have decided the case differently. *Marks v. Struble*, 347 F.Supp.2d 136, 149 (D.N.J. Nov. 18, 2004) (Cooper, J.)  A ruling is contrary to law if the district court finds that the magistrate judge "misinterpreted or misapplied the law." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998) (Walls, J.).  The moving party bears the burden of demonstrating that the magistrate judge's decision as either clearly erroneous or contrary to law. *Marks*, 347 F. Supp. 2d at 149.

## V.     Discussion

Defendants argue that a party does not have to translate documents it produces in discovery, and as such, Judge Waldor's order requiring M&C to translate the memoranda its experts relied upon is clearly erroneous and contrary to law. (Moving Brief, at 6.)  In support of their position, they cite to *In re Puerto Rico Electric Power Authority*, 687 F.2d 501, 505 (1st Cir. 1982) (*"PREPA"*), where the First Circuit overturned an order directing the producing party to translate or pay for the translation of Spanish language documents into English that were produced during discovery.  *Id.* at 506.  The First Circuit determined that Rule 34, which governs the production of documents, did not provide the district court with authority to direct a producing party to translate documents, concluding that such orders "violate the well-accepted principle that each party bear the ordinary burden of financing his own suit."  *Id.* at 507; *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 179 (1974)).

Defendants note that the "only exception" to *PREPA* is where a "party avails itself of the ability to produce business records under Rule 33(d) in lieu of answering

7

an interrogatory." (Moving Brief, at 7.) They cite to *Nature's Plus Nordic v. Natural Organics*, where the district court found that "when a party responds to an interrogatory by producing documents written in a foreign language, Rule 33(d) requires the responding party to provide a translation of those documents." 274 F.R.D. 437, 441 (E.D.N.Y Mar. 28, 2011). There, the court held that both parties should share the cost of translation to equalize the burden. *Id.*

Maxlite contends that defendants have "grossly distorted the prevailing principle on the issue of translations[,]" and argue that *PREPA* has not been expanded "beyond the general rule that a party cannot compel a translation of *all* discovery documents merely because they are produced by a party in response to a demand." (Opposition Brief, at 8, 13) (emphasis in original). But Maxlite also raises another, more compelling argument; by "tender[ing] a *specific* document to discharge its [Rule 26] disclosure obligation" and "expressly relying on the foreign-language documents [in support of its counterclaim], M&C itself has put the specific documents at issue[,]" and therefore must bear the burden of financing its own suit. (Opposition Brief, at 13-14) (emphasis in original). Maxlite asserts that "M&C is not responding to a broad document request from Maxlite. The content and scope of an expert opinion is strictly determined by the proffering party, not by the other side. The expert selects what is relevant [] and relied upon." (*Id.* at 14.) Maxlite thus contends that an expert's reliance on foreign language documents to write his report, particularly one prepared in support of an affirmative counterclaim, is "more akin to the reliance on a document in answer to a specific

8

interrogatory as addressed in [the] *Nature's Plus* line of cases" than documents produced in the ordinary course of discovery. (*Id.* at 13.) Maxlite further notes that "although the duty to disclose arises in this case under Rule 26(a)(2), rather than Rule 33 as in *Nature's Plus*, there is no reason to apply a different logic our outcome." (*Id.* at 14.)

As defendants note, the *PREPA* court specifically rejected the reasoning relied upon by Judge Waldor. *PREPA*, 687 F.2d, at 507 ("We disagree with the court's reading of Rule 34 and with the analogy it drew…Unlike a unique 'detection device,' therefore, which may provide the only means of rendering a particular data base comprehensible, language translation services are generally available in the modern world to a party seeking discovery.") Judge Waldor's reference to Rule 34(a)(1)(A), which requires a producing party to translate electronic data into a readable format, may not appear to apply in this context, but her reasoning remains sound. Rule 26(a)(2)(B) requires that the report contain the "data considered by the witness in forming" his opinion and M&C does not dispute its obligation to provide these underlying financial memoranda. The documents at issue relate exclusively to M&C's counterclaim for damages, and its experts chose to rely on them, making neither *PREPA* and its progeny nor Rule 34 precisely on point. In serving its expert report on damages, M&C presented opposing counsel with long, complicated financial documents written in a foreign language that underpin the conclusions. The Court therefore agrees with Maxlite; that requesting the translation of documents that an adversary's expert relies on is more akin to requesting the translation of documents that are provided by a producing party in lieu of answering

9

an interrogatory. *See Nature's Plus*, 274 F.R.D at 441. Like the party who selects a business document in a foreign language to supplant an interrogatory response, M&C "put the content of those documents directly into issue by its own unilateral action." (Opposition Brief, at 7). M&C therefore must provide opposing counsel with the information its expert considered and relied upon, and it should be in a format which they can review. *PREPA's* holding is grounded in the principle that each party bears the cost of bringing its own suit, which is precisely what Judge Waldor's ordered M&C to do.

M&C again proposes as an alternative that it translate only the portions of the securities filings that its expert relied upon. (Moving Brief, at 8.) Judge Waldor considered this workaround problematic, in particular because it would constrain Maxlite's ability to effectively cross-examine the expert. At the September 20th hearing, she noted Maxlite's "right to cross [the expert] on why he didn't rely on [other information in the filings.] ("9/20/20 Hearing Transcript, at 30.) This is a reasonable question, one that M&C did not address by, for example, making a representation about what specific portion or portions of the filings are extraneous to the experts' conclusions and why, if such is the case. If tailoring made sense, that was M&C's burden demonstrate, and in the absence Judge Waldor's decision to order the translation of the document in full was made in her sound discretion and was not erroneous or contrary to law.

## VI. Conclusion

For the foregoing reasons, the Court denies defendants' motion. An appropriate order will follow.

/s/ Katharine S. Hayden

Date: August 28, 2020                                      Katharine S. Hayden, U.S.D.J.